|        |      |
|--------|------|
| 127    | 269  |
| 154    | 76   |
| 127    | 269  |
| 160    | 254  |

CHARLES KERR, Appellant, *v.* THE WEST SHORE RAILROAD COMPANY, Respondent.

It is not a valid objection to proceedings taken by a railroad company to acquire land for the purposes of its incorporation, that the land is under the waters of a navigable stream; the title individuals may have acquired therein by grant from the state may be taken by the right of eminent domain equally with the upland.

The shores of navigable rivers and streams and the lands under the waters thereof belong to the state within whose territorial limits they lie; it may authorize the construction of bridges, piers, wharves or other obstructions in navigable waters, and when such obstructions are not obnoxious to the regulations of congress and do not come in conflict with the paramount authority of the United States, they are not nuisances.

The state may also grant or confer an exclusive privilege in tide-water, provided it does not trench upon the powers granted to congress.

The provision of the General Railroad Act (Chap. 140, Laws of 1850, § 28, subd. 5), providing that every stream of water, water-course, etc., intersected or touched by a railroad, shall be restored by the corporation " to its former state, or to such state as not unnecessarily to have impaired its usefulness," was designed to protect public rights, not private interests, and applies only to such streams and water-courses as were, before the construction of the road, capable of and accustomed to be generally

navigated, and, so far as it applies to a navigable river, has reference simply to commerce thereon and the general right of navigation.

It does not entitle each owner of upland fronting upon a bay in a river intersected by a railroad, which bay was not navigable in the ordinary meaning of the term, to have a draw-bridge constructed in the road so as to permit the passage of vessels to his property.

Plaintiff was the owner of a farm bounded by the Hudson river, and the state had made to him a grant of lands under water, extending along the whole front of his farm. A railroad corporation, to whose title the defendant is the successor, constructed its road along the river, partly upon plaintiff's upland, partly upon the land so granted by the state, and partly upon land under water in front of plaintiff's property. The lands of plaintiff so occupied by said road were condemned in proceedings by the railroad company to acquire title thereto, and the sum awarded therein was paid by it. The commissioners of the land office, pursuant to authority given by the General Railroad Act, executed to the company a grant of the land under water upon which the road was constructed. Prior to the construction of the road there were two small docks upon plaintiff's land at which vessels landed for freight and passengers, access to which was had by a private way across plaintiff's land from a highway. These docks were within the strip of land acquired by the company. There was also a dock on a small bay near the mouth of a creek, where sand was shipped upon scows and sail vessels. The railroad crossed this bay outside of the land under water granted to plaintiff. Opposite the mouth of the creek the road crossed on a bridge, the bottom of which was four feet above high water. *Held*, that an action was not maintainable to compel defendant to restore said way leading to the docks or to construct a draw-bridge so as to give vessels access to the dock in the bay; that under the condemnation proceedings the railroad company acquired whatever title plaintiff had either in the upland or the land under water; that by the grant from the commissioners of the land office said company acquired both such reserved rights as the state had in the land theretofore granted to plaintiff and the title of the state to the land occupied by the road in front of plaintiff's premises, not included in his grant; and so, that defendant owed no duty to plaintiff save such as was owed to every riparian owner whose access to the channel of the river is cut off by its road; and that as such owner he was not entitled to the relief sought.

*Langdon* v. *Mayor, etc.* (93 N. Y. 129); *Williams* v. *Mayor, etc.* (105 id. 420); *Kingsland* v. *Mayor, etc.* (110 id. 569), distinguished.

(Argued April 30, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order

made July 10, 1889, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

The defendant is the successor of the New York, West Shore and Buffalo Railway Company, a corporation which, prior to the commencement of this action, had constructed a railroad along the west shore of the Hudson river, partly upon and partly in front of lands owned by the plaintiff.

The plaintiff was the owner of a farm in the town of Marlborough, Ulster county, bounded on the east by the Hudson river and extending from the Orange county line northerly 4,000 feet. In 1876, the state made to him a grant of lands under water, extending along the whole front of said farm. The railroad was constructed partly upon the upland, partly upon land under water granted to the plaintiff, and partly upon land under water easterly of or outside of the plaintiff's grant. Upon the southerly portion of plaintiff's lands were two small docks at which vessels landed for freight and passengers, before the construction of the railroad, and from which a road ran northerly through the plaintiff's farm to the highway leading to the village of Marlborough. Upon the northerly part of the plaintiff's premises there was a small bay extending into a stream called Jews creek, up which for a short distance the tide ebbed and flowed. There was also a dock on this bay, near the mouth of the creek, where sand was shipped upon scows and sail vessels. The railroad crossed this bay a considerable distance from the shore line, and at the most northerly part of plaintiff's premises was entirely outside of the land under water granted to the plaintiff. The two docks mentioned were wholly within the strip of land acquired by the railroad. Across the bay aforesaid, the railroad was constructed upon an embankment of earth and stone the greater part of the way, but about opposite the mouth of Jews creek there was an iron bridge seventy feet in length, the bottom of which was four feet above high water. In February, 1882, the commissioners of the land office made a grant to the railroad company of land under water

upon which the road was constructed, and subsequently the said railroad company instituted proceedings to acquire the title to plaintiff's lands, and such proceedings were thereupon had that an award of $3,000 was made and confirmed and paid by the railroad company to the mortgagee of the property as provided by the final order of the court.

This action was commenced in 1887, and alleged the destruction of the docks aforesaid, the maintenance of an embankment across the bay at the mouth of Jews creek, which prevented the plaintiff from navigating said bay, and asked judgment that the defendant restore the highway leading to the docks and the water channel leading to the bay at Jews creek, so as not unnecessarily to impair their usefulness.

Further facts are stated in the opinion.

*Wm. Lounsbery* for appellant. The duties which the defendant owes to the public and to an individual may be enforced by action in equity. (*Jones* v. *Seligman*, 81 N. Y. 190; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98; *Post* v. *W. S. R. R. Co.*, 50 Hun, 301; Code. Civ. Pro. §§ 1660–1663; *Knox* v. *Mayor, etc.*, 55 Barb. 40; Story's Eq. Juris. §§ 626, 922, 927; *Corning* v. *T. I. Factory*, 40 N. Y. 204.) The constitutional right of the plaintiff to his wharf and dock, acquired by grant from the state as against a subsequent grant, has been recently settled by our Court of Appeals. (*Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Williams* v. *Mayor, etc.*, 105 id. 419.) The defendant by its proceedings did not acquire a right and ownership to the docks to the exclusion of the plaintiff. (2 R. S. [7th ed.] 1552, § 18; *A. & N. R. R. Co.* v. *Brownell*, 24 N. Y. 349; *Wasmer* v. *D. & L. R. R. Co.*, 80 id. 212; *H. R. R. Co.* v. *Loeb*, 7 Robt. 418.) The finding of the court as to the opening in the railroad bank at the mouth of Jews creek is not so favorable to the plaintiff as he is entitled to by the evidence. (*Morgan* v. *King*, 35 N. Y. 454.)

*F. L. Westbrook* for respondent. Plaintiff alleges in his complaint that the road is a public nuisance. This it cannot

be, for it is clear that what is done by authority of the people by legislative enactment or by grant of the people by their appointed agents, is in no sense a nuisance, and cannot be so declared by the courts. (*People* v. *Kerr*, 38 Barb. 418; 27 N. Y. 194; *Davis* v. *Mayor*, 14 id. 507; *Gates* v. *Preston*, 41 id. 113; *Jordan* v. *Van Epps*, 85 id. 427, 436; *Pray* v. *Hageman*, 98 id. 351; *Dunham* v. *Bower*, 77 id. 80; 1 Herman on Estop. § 108.) The effect and consequences of the partial stoppage of the bay by the railroad was tried before the commission, and whatever damage it was to plaintiff or his adjoining lands was allowed for by the commissioners, and their action cannot be questioned in this or any other collateral action. If the plaintiff deemed himself aggrieved, he could have appealed. This he did do, and the award was affirmed; that ended his claim for all time to come. (*R. R. Co.* v. *Lansing*, 16 Barb. 68; *R. R. Co.* v. *Gilleland*, 56 Penn. St. 445; *R. R. Co.* v. *Kerr*, 72 N. Y. 330.) Even if Kerr had any vested rights under his grant, still the state, in its sovereignty, its right of eminent domain, could, by a subsequent grant to some other person or corporation, take them away and convey them for the purposes of public use or commerce. (*Bridge Co.* v. *Smith*, 30 N. Y. 44; *Lansing* v. *Smith*, 4 Wend. 9; *Beekman* v. *R. R. Co.*, 3 Paige, 72; *People* v. *B. & O. R. R. Co.*, 117 N. Y. 155; *In re N. Y., W. S. & B. R. R. Co.*, 94 id. 292.) The claim that the plaintiff had a constitutional right to his wharf and dock acquired by grant from the state, as against a subsequent grant, and that such grant carried with it a right of way or access to the wharf over adjacent lands, is erroneous. (*Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Williams* v. *Mayor, etc.*, 105 id. 419; *F. P. B. Co.* v. *Smith*, 30 id. 61; *Marshall* v. *Guion*, 11 id. 475; Laws of 1850, §§ 25, 28; *Lansing* v. *Smith*, 4 Wend. 9; *In re U. E. R. R. Co.*, 112 N. Y. 61.) This action is brought to compel the defendant to construct at that place a draw-bridge, for the passage of steamboats and sail vessels which never went there before the railroad was built, and never could go there. Plaintiff is not entitled to have a draw-bridge there. (*Gould* v. *H.*

*R. R. R. Co.*, 6 N. Y. 522; *Lansing* v. *Smith*, 8 Cow. 146; 4 Wend. 9; *Getty* v. *H. R. R. Co.*, 21 Barb. 617; *Gilman* v. *Philadelphia*, 3 Wall. 729; *D. & H. C. Co.* v. *Lawrence*, 56 N. Y. 612; *Bedlow* v. *N. Y. F. D. Co.*, 112 id. 274; *People* v. *Tibbetts*, 19 id. 525; *People* v. *Canal App.*, 33 id. 487; *Post* v. *Kreischer*, 32 Hun, 50; *Davison* v. *R. R. Co.*, 3 Cush. 106; *Thayer* v. *R. R. Co.*, 125 Mass. 257; *Phil* v. *Scott*, 81 Penn. 80.) The complaint in this action does not contain any demand for a crossing to the new dock, and, therefore, judgment cannot be given in ordering such crossing. (*Southwick* v. *Bank*, 84 N. Y. 429; *Truesdall* v. *Sarles*, 104 id. 167; Code Civ. Pro. § 481, subd. 13.) If the facts claimed to exist are not found, the appellate court cannot assume them to exist, and if there is no request to find them will not look into the testimony to see if it would have been error to refuse to find them. (*Lyons* v. *Cahill*, 18 N. Y. S. R. 375; *Burnap* v. *Bank*, 96 N. Y. 131.) None of the exceptions to findings of fact are well taken. The rule, that if there is any evidence to support a finding of fact an excepion to that finding is useless and unavailing, disposes of them all. (Code Civ. Pro. § 992; *Nostrand* v. *Knight*, 123 N. Y. 618; *Mead* v. *Smith*, 28 Hun, 639; *Porter* v. *Smith*, 35 id. 118; *Baldwin* v. *Doying*, 114 N. Y. 455; *Patterson* v. *Robinson*, 116 id. 199.) The requests of the plaintiff to the court to find certain facts and conclusions of law cannot be reviewed here. The exceptions to the refusal to find those refused is too general to be available, being not sufficiently definite and explicit to raise any question on appeal as to the refusal of the court to find the propositions submitted. (*Newell* v. *Doty*, 33 N. Y. 93; *Hepburn* v. *Montgomery*, 97 id. 618; *Smedis* v. *R. R. Co.*, 88 id. 23; *Ayrault* v. *Bank*, 47 id. 576; *Travis* v. *Travis*, 122 id. 454; *Meacham* v. *Burke*, 54 id. 217, 219; *Porter* v. *Smith*, 107 id. 533.) In considering exceptions to the admission or ruling out of testimony, the rule that in the trial of an equity case, such admission or ruling out will not be considered a ground for reversal, unless it clearly appear that it must necessarily have affected the decision of the case, should be borne in mind. (*People*

*ex rel.* v. *Keator*, 36 Hun, 592; *In re N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 342; *Post* v. *Mason*, 91 id. 539, 549.) In equity cases, costs are always in the discretion of the court, not the appellate court, but the trial court, and neither its allowance nor its disallowance is ground for reversal. (*Menzlick* v. *McCotter*, 87 N. Y. 126, 128; *Ahern* v. *Steele*, 115 id. 210, 211.)

BROWN, J. The proceedings taken by the New York, West Shore & Buffalo Railway Company to acquire a right of way across the lands now owned by the plaintiff were effectual to vest in the railway company whatever title plaintiff or his grantors had either in the upland or in the land under the waters of the river. It is not a valid objection to proceedings taken by a railroad company to acquire land for the purposes of its incorporation that it is under the waters of a navigable stream, and the titles which individuals may have acquired therein by grant from the state may be taken by the exercise of the power of eminent domain equally with the upland. (*In re N. Y. C. & H. R. R. R. Co.*, 77 N. Y. 248; *In re N. Y., W. S. & B. R. Co.*, 27 Hun, 57; affirmed on this point in 89 N. Y. 453.)

Having paid the compensation awarded by the court for the land taken above and below high-water mark in the manner provided in the order confirming the commissioner's report, the railway company owed no further duty to the plaintiff except such as was enjoined upon it by law.

This action seeks to compel the performance by the defendant of the duty imposed upon it by subdiv. 5, sec. 28 of the General Railroad Act (chap. 140, Laws of 1850), and the claim is,

First, that it has failed to restore a highway leading to the plaintiff's docks on the southerly portion of his premises across which the railroad was constructed; and,

Second, that it has failed to restore the channel through which, before the construction of the road, vessels sailed into the bay near the mouth of Jews creek.

Upon the trial the plaintiff wholly failed to establish the fact that there was a highway leading to the docks.

The court found that there was none and the evidence would not sustain any other conclusion. There was a private road leading from the highway across plaintiff's lands to the dock, but the restoration of such a road was not a duty imposed upon the railroad company and its loss or destruction must be deemed compensated by the award made by the commissioners in the condemnation proceedings.

We need not consider in this case whether the defendant would be under a legal obligation to give an owner of lands under water, a part of which was taken for the railroad right of way, a crossing to that part of his grant which lies outside of the railroad, or whether section 44 of the General Railroad Act, relating to farm crossings, is applicable to property so situated.

No claim for such a crossing is made in the complaint, and there is no finding or request to find that the plaintiff was the owner of any land under water outside of the railroad and we are not called upon to determine the existence of a fact which the trial court was not asked to find.

The plaintiff, therefore, has no cause of action against the defendant resting upon any unlawful interference with his private rights in the property upon which the railroad was constructed, or for damages to his adjoining property. All rights which plaintiff or his grantors had in the land have been duly acquired and are now vested in the defendant. It remains to be seen whether he has any cause of action growing out of any interference with his rights in the navigable waters of the river.

The commissioners of the land office were authorized by the legislature to grant to the railroad company any land belonging to the people of the state required for the purposes of its road, and under the grant made by such commissioners to the defendant's predecessor it acquired not only such reserved rights as the state had in the land theretofore granted to the plaintiff, but it also acquired the title of the state to such lands

as the road occupied under water in front of plaintiff's premises not included in the plaintiff's grant, and under this grant and the condemnation proceedings the defendant's title to its road-bed is apparently perfect and complete.

It appears that when the road was constructed across the bay near the mouth of Jews creek it was about one hundred feet westerly from the channel of the river and several hundred feet easterly of the shore line, and its effect was to intercept communication between the shore and the channel of the river and to prevent the passage of vessels to a dock on the plaintiff's property near the mouth of the creek as had been done before the road was constructed, and the question is presented what duty does a railroad company, under such circumstances, owe to the owner of the upland.

The plaintiff's private rights of property having been acquired by the defendant, the duty, if any, is not special to this particular case, but is such as is owing to every riparian owner whose access to the channel of the river is cut off by the railroad embankment. The railroad company is the licensee of the state and its obligations are the same as would rest upon the state if engaged in the construction of a public work except so far as they may have been enlarged by statute.

It is familiar law that the shores of navigable rivers and streams and the lands under the waters thereof belong to the state within whose territorial limits they lie, and may be appropriated by the state to all municipal purposes. The state may authorize the construction of bridges, piers, wharves or other obstructions in navigable waters, and when such structures are not obnoxious to the regulations of congress and do not come in conflict with the paramount authority of the United States they are not nuisances. ( *Willson* v. *Black Bird Creek Marsh Co.*, 2 Peters, 245; *Gilman* v. *Philadelphia*, 3 Wall. 713.)

In *Wilson's* case, Chief Justice MARSHALL said: " The measure authorized by this act stops a navigable creek and must be supposed to abridge the rights of those who have been accustomed to use it. But this abridgment, unless it comes in

conflict with the Constitution or a law of the United States, is an affair between the government of Delaware and its citizens of which this court can take no cognizance."

There is no statute of congress applicable to this case. Jews creek is not a navigable stream and the question presented relates solely to the small bay of the river crossed by the railroad. The legislature may grant or confer an exclusive privilege in tide water provided the right granted does not trench upon the powers granted to congress. (*People* v. *Tibbetts*, 19 N. Y. 523 ; *People* v. *Canal Appraisers*, 33 id. 461 ; *People* v. *Ferry Co.*, 68 id. 71.)

And the state may for the purposes of commerce, partially hinder navigation by authorizing the construction of docks, piers and bridges which are within the demands of commerce and to which navigation to a certain extent is subject. (*D. & H. C. Co.* v. *Lawrence*, 2 Hun, 163 ; *Bedlow* v. *N. Y. F. D. D. Co.*, 112 N. Y. 274.)

The authority to convey lands under water for railroad purposes was conferred upon the commissioners of the land office by the general railroad law of the state.

The power is to be exercised for the benefit of the public and to promote commerce and the public interests, and the construction of the railroad upon the lands granted was a lawful act and not a nuisance. If it impaired the navigation of the river it is sufficient to say that the state authorized it. But the claim made by the appellant is that although it may be lawful to construct a railroad in the river, yet the owner of upland fronting upon every navigable bay, or indentation in the shore across which the railroad passes is entitled to have a draw-bridge erected in the road to permit the passage of vessels to his property, and this right of the upland owner is said to flow from the section of the statute which provides that every stream of water, water-course or highway intersected or touched by the railroad shall be restored by the railroad company " to its former state or to such state as not unnecessarily to have impaired its usefulness." This provision was designed by the legislature to protect public rights, and so far as it

applies to a navigable river it is the commerce thereon and the general right of navigation that is intended to be protected.

Hence it has reference to such streams and water-courses as were, before the construction of the road, capable of and accustomed to be generally navigated.

Public interest, and not private convenience, was thus guarded and protected.

No general commercial interest was infringed in this case. The bay in question was not navigable in the ordinary meaning of that term. That a vessel of light draft might at certain stages of the tide get nearer the shore than it can now in consequence of the existence of the road, does not make it, in a general sense, a navigable part of the river.

The plaintiff's right to navigate the river is not impaired; only the approach to the shore of his property.

I do not see wherein the plaintiff's case differs from that of *Gould* v. *H. R. R. Co.* (6 N. Y. 522), or *Getty* v. *H. R. R. Co.* (21 Barb. 617), or *Ormerod* v. *N. Y., W. S. & B. R. R. Co.* (21 Blatch. 106).

In the first case cited, the plaintiff owned the upland, but had no title to the land below high-water mark. The defendant's road was constructed between high and low-water mark under authority of the legislature, and cut off the plaintiff's access to the river. It was held in this court that the plaintiff had no private right in the waters of the river or in the shore, and was not entitled to recover damages occasioned by the construction of the railroad. In *Getty's* case, the plaintiff owned a farm situated on a bay or indentation of the river, across the mouth of which the defendant had constructed its road, thus preventing access of vessels to the plaintiff's land. Under the provisions of defendant's charter, he claimed that he was entitled to have a draw-bridge constructed in the railroad to permit the passage of vessels to and from his docks. The Supreme Court held that the word "bay," mentioned in the section referred to, which required the defendant to construct drawbridges in certain bays "to provide for free passage of such vessels as heretofore had passed, or now can pass, etc.," meant

only such bays as had a general navigation and such as the public had an interest in.

Ormerod's case was an action to restrain the construction of a railroad which would cut off the approach of vessels to certain brick-yards situated within a small bay of the river. The plaintiff was the owner of a sailing vessel navigating the river having a contract to carry brick from said yards to the city of New York. The land under water where the road was constructed had been granted to the owner of the brick-yards, and defendant had taken proceedings to acquire title thereto under the General Railroad Law. The federal court held that there was no interference with the general navigation of the river, and that, as the state had granted title to the lands under water, that title could be acquired by the defendant, and that the question was one solely of compensation between the defendant and the land owner.

We are of the opinion, therefore, that this plaintiff is not, as a mere riparian owner, entitled to the relief asked for, and that, as such, he has, by the construction of the railroad, sustained no legal injury. So far as he had an ownership in the land taken, he has been duly compensated.

The defendant, however, appears to have recognized the propriety of affording some access to the bay in question and constructed a bridge, seventy feet in length, under which scows can pass to and from the river, and in doing so it fully complied with the obligation imposed upon it by the legislature.

There is nothing in *Langdon* v. *Mayor, etc.* (93 N. Y. 129), *Williams* v. *Mayor, etc.* (105 id. 420), or *Kingsland* v. *Mayor, etc.* (110 id. 569), that conflicts with the views here expressed.

The fact that the plaintiff has been compensated in the manner provided by law for the rights of which he has been deprived and the loss of property he has sustained by the construction of the railroad, sufficiently distinguishes those cases from the one under consideration.

The judgment should be affirmed, with costs.

All concur, except PARKER, J., not sitting.

Judgment affirmed.